[Cite as *State v. Singh*, 2018-Ohio-3473.]

STATE OF OHIO       )                     IN THE COURT OF APPEALS
                                  )ss:                NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )

STATE OF OHIO                       C.A. No.     28819

     Appellee

     v.                                 APPEAL FROM JUDGMENT
                                    ENTERED IN THE
MANPREET SINGH               COURT OF COMMON PLEAS
                                    COUNTY OF SUMMIT, OHIO
     Appellant                CASE No.     CR-2017-05-1552

DECISION AND JOURNAL ENTRY

Dated: August 29, 2018

TEODOSIO, Presiding Judge.

{¶1} Appellant, Manpreet Singh, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} In April of 2017, Mr. Singh was involved in an argument with his mother ("B.K.") in their kitchen. According to B.K., Mr. Singh was loud, angry, and asking her for money, which she believed would be used to buy drugs. She wanted to get Mr. Singh to the hospital because he was drunk and out of control, so she called a former neighbor ("S.G.") for help because she does not drive and only speaks Punjabi. S.G. arrived and both he and B.K. soon ran out of the house and away from Mr. Singh while fearing for their safety. They ran to a neighbor who was arriving home from lunch ("F.M.") and asked him to call 911. F.M. and responding Sheriff's deputies testified that B.K. and S.G. both claimed Mr. Singh had threatened them with a knife. S.G. had to interpret for B.K. because she does not speak English.

{¶3} Two deputies attempted to make contact with Mr. Singh inside the home, but instead had to chase after him once he fled from the house. The deputies were unable to locate Mr. Singh, so they returned to the home to take pictures, but eventually heard a noise upstairs. One deputy looked out a window and saw Mr. Singh jump out of a second-story window down to the ground. The deputies chased him again, but failed to apprehend him again.

{¶4} While many law enforcement officials were now searching the area for Mr. Singh, one deputy eventually saw him walking down the street toward a nearby pond. Mr. Singh took off his shirt and ran again, so the deputy chased him. Sheriff Steve Barry then spotted Mr. Singh near the pond and, at gunpoint, repeatedly ordered him to drop the item in his hand and to get on the ground. Mr. Singh did not comply, but instead began running around or spinning in circles while screaming, "I got nothing, you can't shoot me." Once he was close enough, Sheriff Barry realized Mr. Singh was only holding a cell phone. The Sheriff repeated his orders and Mr. Singh failed to comply, so the Sheriff grabbed Mr. Singh's arm and took him to the ground. The two men wrestled on the ground while Mr. Singh struggled to get free and hit the Sheriff in the leg repeatedly with his flailing arm. The deputy who was chasing Mr. Singh soon arrived and used her taser twice on him to allow Sheriff Barry an opportunity to get Mr. Singh handcuffed. When they searched him, Mr. Singh had a cell phone and a glass pipe on his person.

{¶5} After a jury trial, Mr. Singh was found guilty of obstructing official business and illegal use or possession of drug paraphernalia, but not guilty of domestic violence and resisting arrest. The trial court sentenced him to nine months in prison.

{¶6} Mr. Singh now appeals from his convictions and raises three assignments of error for this Court's review.

{¶7} For ease of analysis, we will consolidate two of Mr. Singh's assignments of error.

II.

## ASSIGNMENT OF ERROR ONE

THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN A FINDING OF GUILT FOR FELONY OBSTRUCTING OFFICIAL BUSINESS AND POSSESSION OF DRUG ABUSE INSTRUMENTS.

## ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED BY NOT GRANTING DEFENSE COUNSEL'S CRIMINAL RULE 29 MOTION.

{¶8} In his first assignment of error, Mr. Singh argues that his convictions are not supported by sufficient evidence. In his third assignment of error, he argues that the trial court erred in denying his Crim.R. 29 motion for acquittal. We disagree with both propositions.

{¶9} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶10} Mr. Singh was convicted of obstructing official business under R.C. 2921.31(A), which states: "No person, without privilege to do so and with purpose to prevent, obstruct, or

delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). Law enforcement officers are considered public officials. *See* R.C. 2921.01(A). When obstructing official business creates a risk of physical harm to any person, the offense is enhanced to a felony of the fifth degree. R.C. 2921.31(B). "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶11} Mr. Singh argues that his obstructing official business conviction was based on insufficient evidence because no evidence was introduced to prove he was given, or he ignored, any orders from any law enforcement officers until he was placed under arrest. However, Mr. Singh's argument is misplaced because disobeying, or failing to comply with, an order of a police officer is not an essential element of obstructing official business that the State was required to prove. *See* R.C. 2921.31(A). *See also State v. Newsome*, 4th Dist. Hocking No. 17CA2, 2017-Ohio-7488, ¶ 16 ("Although many cases involving this offense have fact patterns that include defendants failing to obey an order and fleeing from law enforcement, * * * a defendant can still obstruct official business without disobeying an order of law enforcement."). To affirm a conviction for obstructing official business on appeal, this Court has held that there must be evidence that the defendant's actions hampered or impeded a law enforcement investigation and that the defendant intended such a result to occur. *See State v. Jordan*, 9th Dist. Summit No. 27005, 2014-Ohio-2857, ¶ 40. Because Mr. Singh only argues here that the

State failed to introduce sufficient evidence of an element it was not required to prove, his argument must fail.

{¶12} Mr. Singh further argues that merely walking toward a pond did not create the risk of physical harm to any persons that is necessary to enhance his obstructing official business conviction to a felony. But, Mr. Singh's considerably narrow and selective account of only one of his many actions that day ignores the ample evidence presented of his other actions that did cause a risk of physical harm, as recounted by multiple witnesses at trial. Deputies Teresa Hill and Linda Urycki were the first to arrive at the scene that day. After speaking to several witnesses outside, the deputies attempted to make contact with Mr. Singh by entering the family's house, but were unable to speak with him because he fled from the house when they entered. The two deputies gave chase and searched around for approximately 15 minutes, but were unable to locate Mr. Singh. They returned to the house to take pictures inside the kitchen, and Deputy Urycki soon heard a noise coming from upstairs. She testified that she looked out the window and saw Mr. Singh jump out of a second-story window from above and land on the ground below. The two deputies exited the house and gave chase again, but were still unable to locate Mr. Singh. More police began arriving at the scene as the search for Mr. Singh continued. Deputy Hill eventually saw Mr. Singh walking down the road toward a nearby pond. Mr. Singh took his shirt off and began to run again. Deputy Hill was too far away to use her taser, so she chased him yet again.

{¶13} Sheriff Barry testified that he searched for Mr. Singh for approximately 20 minutes and eventually found him by the pond. The Sheriff drew his firearm because Mr. Singh had a black object in his hand and the Sheriff was aware that Mr. Singh was possibly armed. He began yelling the command: "Sheriff's Office, get on the ground." Mr. Singh placed his hands

in the air, but then began running or spinning in circles while screaming, "I got nothing, you can't shoot me." The Sheriff continued to approach Mr. Singh while repeatedly pointing to his badge and commanding him to drop the item in his hand and to get on the ground. The Sheriff testified that Mr. Singh said, "F**k you. I got nothing, you can't shoot me" and "F**k you, I'm not getting on the ground." He further testified that Mr. Singh was very agitated, jittery, and angry. Mr. Singh then began repeatedly telling the Sheriff, "[S]hoot me."

{¶14} Once Sheriff Barry was close enough to realize Mr. Singh was only holding a cell phone, he testified that he holstered his firearm and grabbed Mr. Singh's left arm while repeating his order to get on the ground. He further testified that because he had no handcuffs with him and Mr. Singh had been evading deputies for the past half hour, he took Mr. Singh to the ground to await the arrival of another deputy. Deputy Hill was hastily approaching the two men and testified that Mr. Singh was not cooperating while the Sheriff was telling him to get on the ground, so she saw the Sheriff take him to the ground. The Sheriff testified that he told Mr. Singh he was under arrest and, as the two men went to the ground, he lost his grip on Mr. Singh's left arm. Mr. Singh pushed up off of the ground and Sheriff Barry had to resituate himself and grab Mr. Singh's right arm. The Sheriff ordered him to stop resisting, but Mr. Singh turned to his side, yelled for the Sheriff to get off of him, and tried to get up. "[A] risk of physical harm can exist when an officer attempts to restrain a suspect." *State v. Gordon*, 9th Dist. Summit No. 28331, 2017-Ohio-7147, ¶ 22, citing *State v. Vactor*, 9th Dist. Lorain No. 02CA008068, 2003-Ohio-7195, ¶ 39. Sheriff Barry testified that Mr. Singh's arm was flailing around and hitting the Sheriff's leg during the struggle. *See* R.C. 2901.01(A)(3) (defining physical harm to persons as *any injury regardless of its gravity* or duration.). Deputy Hill testified that she saw the Sheriff wrestling with Mr. Singh and attempting to get a hold of his

arms. Sheriff Barry testified that, in circumstances such as these, there is a risk of physical harm to the officers: "There is always a risk because of the resources that we carry, including a firearm, of being taken from us, or any type of physical assault, this type of thing * * *." Deputy Hill soon reached the two men and tased Mr. Singh, but he was still uncooperative. The deputy then tased Mr. Singh a second time, which allowed the Sheriff to finally get him handcuffed. The fact that Mr. Singh's actions necessitated the use of a taser twice on him also created a risk of physical harm to the officers. Therefore, we conclude that the State presented sufficient evidence, if believed, that while obstructing official business Mr. Singh's actions created a risk of physical harm to the officers.

{¶15} Mr. Singh also suggests that because he was found not guilty of resisting arrest, he could not logically have been found guilty of obstructing official business. We first note that juries are not required to reach consistent verdicts between separate counts. *See State v. Schmitz*, 9th Dist. Lorain Nos. 11CA010043 and 11CA010044, 2012-Ohio-2979, ¶ 30. Regardless, Mr. Singh never objected or raised any argument regarding inconsistent verdicts at the trial court level and he may not attempt to do so now on appeal. This Court has consistently held that we will not consider as error any issue a party was aware of but failed to bring to the trial court's attention at a time when the trial court might have corrected the error. *See, e.g., State v. Inman*, 9th Dist. Medina No. 13CA0074-M, 2014-Ohio-3538, ¶ 15. Thus, Mr. Singh has forfeited all but plain error as to any inconsistent verdicts argument. *See id.* He has not raised plain error on appeal, and we decline to raise it on his behalf. *See id.* at ¶ 15, fn. 1.

{¶16} Mr. Singh was also convicted of illegal use or possession of drug paraphernalia under R.C. 2925.14(C)(1), which states: "[N]o person shall knowingly use, or possess with purpose to use, drug paraphernalia." "A person acts knowingly, regardless of purpose, when the

person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "'Possess' or 'possession' means having control over a thing or substance * * *." R.C. 2925.01(K). Pursuant to R.C. 2925.14(A)(13), "'drug paraphernalia' means 'any equipment, product, or material of any kind that is used by the offender, intended by the offender for use, or designed for use, in * * * ingesting, inhaling, or otherwise introducing into the human body, a controlled substance * * *[,]'" including "[a]n object, instrument, or device for ingesting, inhaling, or otherwise introducing into the human body, marihuana, cocaine, hashish, or hashish oil, such as a * * * glass * * * pipe * * *."

{¶17} As to the glass pipe found in Mr. Singh's pocket, he argues that Deputy Hill admitted at trial that she did not know what it was used for, no one tested the pipe for any controlled substance residue, and there was no evidence regarding the use of the pipe for any illegal purposes.

{¶18} Deputy Hill testified at trial that when they searched Mr. Singh, he had a cell phone and a glass pipe on his person. Mr. Singh is correct that the deputy admitted on cross-examination she did not conduct any testing on the glass pipe and, therefore, did not know its exact purpose. However, he ignores her testimony on direct examination in which she referred to the item as a "glass smoking pipe" and stated, "[T]hat's what people use to smoke narcotics out of." She further testified that she is familiar with these types of items as commonly being used to ingest drugs because she has come across them "100 times probably" in her five years working for the Sheriff's Office. She testified that Mr. Singh's glass pipe appeared to have been already used because the end was blackened from smoke, which she stated is commonly called a "Chore Boy." Testimony from other witnesses at trial also indicated that the heated argument between Mr. Singh and his mother was over her refusal to give Mr. Singh money because she

believed he would use it to buy drugs. B.K. testified that Mr. Singh was drunk, under the influence, and seemed to be drugged. S.G. testified that he thought Mr. Singh was under the influence of something and had possibly been drinking or doing drugs, but he was not completely sure. Whether the glass pipe was tested to determine if it contained any residue of controlled substances is inconsequential because R.C. 2925.14(C)(1) only requires the use or possession of drug paraphernalia, not the use or possession of any controlled substances. *See State v. Toth*, 9th Dist. Medina No. 16CA0086-M, 2017-Ohio-5481, ¶ 13. Therefore, we conclude that the State presented sufficient evidence, if believed, that Mr. Singh committed the offense of illegal use or possession of drug paraphernalia and that any rational trier of fact could have found all the elements of that offense proven beyond a reasonable doubt.

{¶19} We further conclude that the trial court did not err in denying Mr. Singh's Crim.R. 29 motion for acquittal.

{¶20} Accordingly, Mr. Singh's first and third assignments of error are overruled.

### ASSIGNMENT OF ERROR TWO

THE VERDICT OF GUILTY FOR FELONY OBSTRUCTING OFFICIAL BUSINESS AND POSSESSION OF DRUG ABUSE INSTRUMENTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} In his second assignment of error, Mr. Singh argues that his convictions are against the manifest weight of the evidence. We disagree.

{¶22} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶23} Under this assignment of error, Mr. Singh states: "Assuming, *arguendo*, that there was sufficient evidence to sustain the convictions[,] the convictions in this case were clearly against the manifest weight of the evidence." Mr. Singh then revisits his sufficiency arguments again, claiming he was not given any orders from law enforcement until his arrest, there was no risk of physical harm, he could not have been found guilty of obstructing official business when he was found not guilty of resisting arrest, the glass pipe was never tested, and Deputy Hill testified that she did not know the purpose of the pipe. "[S]ufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. We have already addressed the sufficiency of the evidence in this case, and decline to do so again. *See State v. Johnson*, 9th Dist. Summit No. 26914, 2014-Ohio-2856, ¶ 36. We also decline to develop a manifest weight argument on Mr. Singh's behalf. *See State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32. *See also Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, *22 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out").

{¶24} Accordingly, Mr. Singh's second assignment of error is overruled.

III.

**{¶25}** Mr. Singh's first, second, and third assignments of error are all overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JAMES W. ARMSTRONG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.