[Cite as *State v. Seibert*, 2021-Ohio-3069.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

    v.

DREW SEIBERT

    Appellant

C.A. Nos.    20AP0013
                 20AP0014


APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE Nos.    2019 CR-B 1418
                 2019 CR-B 1495

DECISION AND JOURNAL ENTRY

Dated: September 7, 2021

---

CARR, Presiding Judge.

{¶1}    Drew Seibert appeals from the judgment of the Wayne County Municipal Court. This Court affirms.

I.

{¶2}    This is a consolidated appeal of two separate criminal cases: 2019 CR-B 001418 ("First Case") and 2019 CR-B 001495 ("Second Case"). In the First Case, Seibert was charged with one count of aggravated menacing in violation of R.C. 2903.21(A), and one count of domestic violence in violation of R.C. 2919.25(C). The First Case arose from events that occurred on October 20, 2019, between Seibert and his father ("Father"). The First Case proceeded to a jury trial.

{¶3}    During the jury trial, Father testified that Seibert had been living with him for a few weeks in his studio apartment. According to Father, he came home from work one evening

and Seibert started an argument "out of the blue[.]" Seibert accused Father of impregnating a 13-year-old girl, and threatened to kill him. Father testified that he did not want anything to happen, so he left the apartment, walked to his neighbor Jeffrey's apartment, and asked Jeffery to call the police. Father explained that he asked Jeffrey to call the police because he did not have his phone on him.

{¶4} Jeffrey called the police, and they arrived shortly thereafter. Father told the police, and then testified at trial, that he believed Seibert when Seibert told him he was going to kill him. Father described Seibert's behavior as erratic and crazy, and indicated that he was afraid Seibert "was going to do something." On cross-examination, Father acknowledged that he was also afraid Seibert would hurt himself.

{¶5} Jeffrey also testified at trial, stating that Father called him and asked him to call the police on Seibert. He explained that Father called him first, then Father walked over to his apartment, and then he (Jeffrey) called the police. Jeffrey described Father as distraught and upset, and explained that Father asked him to call the police on Seibert because Father did not have "the heart to call" the police on his son.

{¶6} Two responding officers also testified. One officer testified that Father seemed fearful, and the other officer testified that Father indicated that he thought Seibert's threat to kill him was credible. The jury ultimately found Seibert guilty of aggravated menacing, but not guilty of domestic violence.

{¶7} In the Second Case, Seibert was charged with the following five counts: (1) assault in violation of R.C. 2903.13(A); (2) aggravated menacing in violation of R.C. 2903.21; (3) obstructing official business in violation of Section 2921.31(A); (4) domestic violence in violation of R.C. 2919.25(C); and (5) disorderly conduct in violation of R.C. 2917.11(A)(1).

The Second Case arose from events that occurred on November 3, 2019, between Seibert, Father, and Jeffrey. The Second Case proceeded to a bench trial.

{¶8} During the bench trial, Father again testified that Seibert was living with him in his studio apartment. According to Father, when he got out of the shower, Seibert told him he still smelled. Seibert then acted aggressively toward him, telling him he was "in [his] bubble[,]" and instructed him to get out of his way, otherwise he would hurt him. Seibert had a metal water bottle in his hand and threatened to use it against Father. Father testified that he tried to stay away from Seibert, but they ended up wrestling, and Father eventually fell partially under the bed. Seibert then got up and went to the bathroom, and Father called Jeffrey, asking him to come over and help him up. Father testified that Seibert was acting like he was on drugs and was "acting out of his head."

{¶9} Jeffrey arrived at Father's apartment and started to help Father get up off the floor. According to Jeffrey, Seibert was in the bathroom when he arrived, but then came out of the bathroom in a "violent state" and told Jeffrey he was "in [his] bubble[.]" Jeffrey explained to Seibert that he was just there to help Father. Seibert then told Jeffrey he would kill him with one punch, so Jeffrey responded: "okay take the first punch, make it the first punch because after the first punch is throw[n] then you are going to see me go off." Seibert then "slugged [him.]" Jeffrey explained that by "slugged" he meant Seibert pushed him. Jeffrey fell backward and hit his head on the TV stand, causing a scratch. Another neighbor called the police, and they arrived shortly thereafter.

{¶10} Two responding officers testified at trial. The first officer testified that when he arrived at the apartment, Seibert told him nothing was going on. Within a few minutes of their arrival, the police told Seibert he was under arrest. Seibert then told the officers they were not

real police officers and refused to put his hands behind his back and comply with the arrest. The officers reiterated that he was under arrest, and eventually persuaded Seibert to walk from the door of the apartment to their cruisers in the parking lot. The officer explained that Seibert continued to refuse to comply with the arrest and was being verbally aggressive. After about 30 minutes of non-compliance, the officers forcibly arrested Seibert.

{¶11} The other officer testified similarly, adding that Seibert indicated he would physically resist them if they tried to arrest him. That officer also testified that it took four police officers and two deputy sheriffs to arrest Seibert, and that Seibert's behavior delayed the arrest and impeded his ability to perform his job. He testified that, had Seibert complied with their requests, he would have been arrested as much as thirty minutes earlier.

{¶12} The trial court found Seibert guilty of all five charges. Seibert separately appealed both cases, and this Court consolidated his appeals. He now raises two assignments of error for this Court's review.

II.

## ASSIGNMENT OF ERROR I

SEIBERT'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} In his first assignment of error, Seibert challenges the sufficiency and the weight of the evidence presented in both cases. It is well-established, however, that "a review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations." *State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 18. Accordingly, "it is not appropriate to combine a sufficiency argument and a manifest weight argument within a single assignment of error." *State v. Mukha*, 9th Dist.

Wayne No. 18AP0019, 2018-Ohio-4918, ¶ 11; *see* Loc.R. 7(B)(7) ("Each assignment of error shall be separately discussed * * *."); App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to * * * argue the assignment separately in the brief[.]"). Nonetheless, we exercise our discretion to consider the merits of Seibert's combined assignment of error.

{¶14} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶15} On the other hand, when considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26.

**{¶16}** We will first address Seibert's arguments relative to the First Case, beginning with his challenge to the sufficiency of the evidence presented in support of his conviction for aggravated menacing.

**{¶17}** R.C. 2903.21(A) governs aggravated menacing and provides, in relevant part, that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person[.]" "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). R.C. 2901.01(A)(5)(b) defines "[s]erious physical harm to persons" as "[a]ny physical harm that carries a substantial risk of death[.]"

**{¶18}** Seibert argues that the State failed to prove beyond a reasonable doubt that Father believed he would cause him serious physical harm. In support of his argument, Seibert points to Father's testimony wherein Father acknowledged that he was concerned for Seibert's safety. Seibert concludes that the evidence demonstrated that Father was more concerned for his (Seibert's) safety than his own.

**{¶19}** As previously noted, Father testified that Seibert told him he was going to kill him, and that he believed Seibert's threat was credible. The fact that Father was also concerned for his son's safety does not impact the sufficiency analysis. Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found the essential elements of aggravated menacing proven beyond a reasonable doubt. *See State v. Parker*, 9th Dist. Summit No. 23303, 2007-Ohio-960, ¶ 9, quoting R.C. 2903.21(A) (noting that threatening to kill someone satisfies the belief "that the offender will cause serious physical harm" element of

aggravated menacing). We, therefore, reject Seibert's sufficiency argument relative to the First Case. We now turn to Seibert's manifest-weight argument relative to the First Case.

{¶20} Seibert argues that his conviction for aggravated menacing was against the manifest weight of the evidence because Father and Jeffrey's testimonies were contradictory and unreliable. Seibert points to the fact that Father testified that he left the apartment, walked to Jeffrey's apartment, and asked Jeffrey to call the police because he did not have his phone on him. Jeffrey, on the other hand, testified that Father called him and asked him to call the police because Father did not want to call the police on his son. Jeffrey testified that, after Father called him, Father walked over to his apartment, and then he (Jeffrey) called the police. Seibert surmises that Father's version of the events suggests that Father left the apartment because he was afraid for his own safety, while Jeffrey's version of the events suggests that Father stayed in the apartment because he was concerned for Seibert's safety, not his own safety. He concludes that these testimonies were contradictory and not credible.

{¶21} While the above testimony was conflicting as to whether Father called Jeffrey before walking over to Jeffrey's apartment, the jury was in the best position to evaluate the witnesses' credibility, and we cannot say that this conflicting testimony rendered Seibert's conviction for aggravated menacing against the manifest weight of the evidence. *State v. Ross*, 9th Dist. Wayne No. 12CA0007, 2013-Ohio-522, ¶ 16 ("While there was conflicting testimony at trial, we note that the trier of fact was in the best position to evaluate the credibility of witnesses, and this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge simply because the trial court chose to believe certain witnesses' testimony over the testimony of others.").

{¶22} Seibert also argues that the verdicts in the First Case were inconsistent because he was found not guilty of domestic violence, yet guilty of aggravated menacing. He argues that this demonstrates that the jury clearly lost its way, rendering his conviction against the manifest weight of the evidence. Seibert, however, "has not separately argued that the trial court erred by accepting inconsistent jury verdicts, so our consideration of this argument is limited to whether it bears on the weight of the evidence. It does not." *State v. Phillips*, 9th Dist. Summit No. 27552, 2017-Ohio-1186, ¶ 20. "Even assuming arguendo that the issue was separately argued on appeal, 'juries are not required to reach consistent verdicts between separate counts.'" *State v. Hamilton*, 9th Dist. Lorain No. 17CA011238, 2019-Ohio-1829, ¶ 23, quoting *State v. Singh*, 9th Dist. Summit No. 28819, 2018-Ohio-3473, ¶ 15. "Moreover, [Seibert] never objected or raised any argument regarding inconsistent verdicts at the trial court level and has thus forfeited all but plain error, which we will not sua sponte raise on his behalf." *Hamilton* at ¶ 23, citing *Singh* at ¶ 15.

{¶23} In light of the foregoing, we conclude that Seibert has not established that his conviction for aggravated menacing in the First Case was against the manifest weight of the evidence. We now turn to Seibert's sufficiency and manifest-weight arguments relative to the Second Case.

{¶24} Seibert argues that his convictions for assault, aggravated menacing, and obstructing official business in the Second Case were not supported by sufficient evidence, and/or that they were against the manifest weight of the evidence. We will address each of Seibert's convictions from the Second Case in turn, beginning with his conviction for assault.

{¶25} R.C. 2903.13(A) governs assault and provides, in relevant part, that "[n]o person shall knowingly cause or attempt to cause physical harm to another[.]" As previously noted, "[a]

person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Physical harm" to a person means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶26}** Seibert argues that his conviction for assault was not supported by sufficient evidence because the State failed to prove that he knowingly caused or attempted to cause physical harm to Jeffrey, as opposed to accidentally pushing him. We reject that argument. Jeffrey testified that Seibert pushed him in the chest, causing him to fall backwards and hit his head on the corner of the TV stand. Jeffrey testified that this resulted in a scratch on his head. Viewing this evidence in a light most favorable to the State, a rational trier of fact could have found the essential elements of assault proven beyond a reasonable doubt.

**{¶27}** Seibert also argues that his conviction for assault was against the manifest weight of the evidence. He argues that Jeffrey provided inconsistent testimony and was otherwise not credible. Seibert points to Jeffrey's testimony wherein Jeffrey indicated that Seibert told him he would kill him with one punch. Seibert asserts that it is not consistent that, after telling Jeffrey he would kill him with one punch, he would simply push Jeffrey in the chest. Seibert also asserts that the evidence was unclear as to whether he knowingly pushed Jeffrey, or whether he accidentally pushed him as he (Seibert) was leaving the apartment. Additionally, Seibert asserts that Jeffrey was not credible because he initially testified that he was "slugged[,]" but then later testified that he was pushed.

**{¶28}** Seibert's arguments are unpersuasive. The jury was free to believe Jeffrey's testimony that Seibert pushed him in the chest after Seibert threatened to punch him. Additionally, there was no evidence to indicate that Seibert accidentally pushed Jeffrey.

Regarding the fact that Jeffrey initially testified that Seibert "slugged" him, Jeffrey explained that by "slugged[,]" he meant that Seibert pushed him. Thus, contrary to Seibert's argument, there was no inconsistency between Jeffrey's initial testimony that he was slugged, and his later testimony that he was pushed. Having reviewed the record, this Court cannot say that Seibert's conviction for assault in the Second Case was against the manifest weight of the evidence. We now turn to his conviction for aggravated menacing.

{¶29} As previously noted in our discussion of the First Case, R.C. 2903.21(A) governs aggravated menacing and provides, in relevant part, that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person[.]" The definitions for "knowingly" and "serious physical harm" set forth above also apply here.

{¶30} Seibert argues that his conviction for aggravated menacing in the Second Case was not supported by sufficient evidence because the State failed to establish that Jeffrey believed he (Seibert) was going to cause him serious physical harm. We disagree.

{¶31} Jeffrey testified that Seibert was in a "violent state" and that Seibert told him he would kill him with one punch. Jeffrey testified that Seibert seemed to be on drugs, and that he believed Seibert could act upon his threat. Viewing this evidence in a light most favorable to the State, a rational trier of fact could have found the essential elements of aggravated menacing proven beyond a reasonable doubt. *See Parker*, 2007-Ohio-960, at ¶ 9, quoting R.C. 2903.21(A) (noting that threatening to kill someone satisfies the belief "that the offender will cause serious physical harm" element of aggravated menacing).

{¶32} Seibert also argues that his conviction for aggravated menacing was against the manifest weight of the evidence because Jeffrey did not believe that he (Seibert) would cause

him serious physical harm. Seibert supports his position by citing Jeffrey's testimony wherein Jeffrey admitted telling Seibert: "okay take the first punch, make it the first punch because after the first punch is throw[n] then you are going to see me go off." Seibert concludes that this statement demonstrates that Jeffrey did not believe that he (Seibert) would cause him serious physical harm.

{¶33} Despite Seibert's arguments, the jury was free to believe Jeffrey's testimony that he believed Seibert's threat to kill him with one punch was credible. The fact that Jeffrey responded by threatening to hit him back does not change that fact. We, therefore, conclude that Seibert has not established that his conviction for aggravated menacing in the Second Case was against the manifest weight of the evidence. We now turn to Seibert's argument relative to his conviction for obstructing official business.

{¶34} R.C. 2921.31(A) governs obstructing official business and provides that:

No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

Seibert argues that this statute requires an affirmative act, and that his non-compliance with the arrest was insufficient to support his conviction for obstructing official business. Based upon this Court's precedent discussed below, we reject Seibert's argument.

{¶35} "An affirmative act is required in order to support a finding that an individual was guilty of obstructing official business." *State v. Harris*, 9th Dist. Summit No. 27639, 2015-Ohio-5378, ¶ 7, quoting *North Ridgeville v. Reichbaum,* 112 Ohio App.3d 79, 84 (9th Dist.1996). "The 'mere failure to obey a law enforcement officer's request may not amount to obstruction.'" *Harris*, quoting *State v. Griffin,* 9th Dist. Summit No. 19278, 1999 WL 334781, *2 (May 26, 1999). That said, this Court has stated that "failing to comply with an officer's order may

constitute obstruction under some circumstances." *State v. Keagle*, 9th Dist. Summit Nos. 29045 29056, 2019-Ohio-3975, ¶ 21. "[A] suspect may indeed obstruct official business when he creates a significant delay by ignoring an officer's repeated orders, thereby impeding the officer's ability to perform his lawful duties." *Id., quoting State v. Moss*, 9th Dist. Summit No. 28986, 2018-Ohio-4747, ¶ 12.

{¶36} Here, the officers testified that they told Seibert he was under arrest more than once, but he refused to comply with the arrest. They testified that they eventually convinced him to walk from the apartment door to the parking lot, but that he was verbally aggressive and continued to refuse to comply with the arrest. An officer testified that this delayed the arrest by as much as 30 minutes, and that Seibert's actions impeded their ability to perform their lawful duties. Viewing this evidence in a light most favorable to the State, a rational trier of fact could have found the essential elements of obstructing official business proven beyond a reasonable doubt. *See Keagle* at ¶ 22. Seibert's argument, therefore, lacks merit.

{¶37} In light of the foregoing, Seibert's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING SEIBERT'S ORAL MOTION
FOR A MISTRIAL.

{¶38} In his second assignment of error, Seibert argues that the trial court erred by denying his motion for a mistrial in the First Case. He argues that, during their testimony in the First Case, Father and Jeffrey referred to facts from the Second Case. He also argues that the State referred to facts from the Second Case during its closing argument in the First Case. Seibert concludes that these improper references warranted a mistrial because they may have given the jury the impression that he and Father argued in the past. For the reasons that follow,

we conclude that the trial court did not abuse its discretion by denying Seibert's motion for mistrial.

{¶39} This Court has explained our standard of review on a motion for a mistrial as follows:

> We review a trial court's decision denying a motion for a mistrial for an abuse of discretion. *State v. Horne*, 9th Dist. Summit No. 25238, 2011-Ohio-1901, ¶ 18. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible. The essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely affected." (Internal quotations and citations omitted.) *State v. Edwards*, 9th Dist. Summit No. 28164, 2017-Ohio-7231, ¶ 13. "In determining whether a defendant was deprived of a fair trial, a court must determine whether, absent the error or irregularity, the jury would have found the appellant guilty beyond a reasonable doubt." (Internal quotations omitted.) *Id.* "To determine whether the alleged misconduct resulted in prejudice, a court must consider (1) the nature of the error, (2) whether an objection was made, (3) whether the trial court provided corrective instructions, and (4) the strength of the evidence against the defendant." *Id.*

*State v. Grether*, 9th Dist. Summit No. 28977, 2019-Ohio-4243, ¶ 25.

{¶40} Regarding Father's testimony, Seibert asserts that Father testified in the First Case that he and Seibert got into an argument after he (Father) got out of the shower. Seibert asserts that this was a reference to the Second Case. The record reflects that defense counsel objected at trial, and the trial court called for a recess. After the recess, the trial court instructed the jury to disregard Father's testimony about his interactions with Seibert after he (Father) got out of the shower. It further instructed the jury to not consider that testimony for any purpose. When Seibert's defense counsel moved for a mistrial, the trial court acknowledged that it has already instructed the jury to disregard that testimony.

{¶41} While Seibert argues that Father's testimony was highly prejudicial and may have given the jury the impression that he and Father argued in the past, we conclude that the trial court did not abuse its discretion by denying his motion for a mistrial relative to Father's

testimony. Father's reference to facts from the Second Case was brief, and the trial court instructed the jury to disregard that testimony and to not consider it for any purpose. "It is presumed that the jury followed the court's instructions." *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, ¶ 147. Moreover, given the strength of the remaining testimony presented, we cannot say that Seibert suffered prejudice. *Grether* at ¶ 25.

**{¶42}** Regarding Jeffrey's testimony, Seibert asserts that Jeffrey testified that Father "came over to his apartment and told him to call the police." He then concludes that "[t]hese are the facts of [the Second Case], not of this case." In the Second Case, however, Father testified that he called Jeffrey and asked him to come help him up off the floor. Jeffrey testified similarly. This Court fails to see how Jeffrey's testimony as cited in Seibert's merit brief was a reference to the Second Case. We note, however, that Seibert's argument to the trial court on this issue was different than his argument on appeal.

**{¶43}** When Seibert's defense counsel moved for a mistrial, the trial court clarified that defense counsel's challenge to Jeffrey's testimony was that Jeffrey testified that Father called him and asked him to call the police, yet Father testified that he (Father) walked to Jeffrey's apartment and asked him to call the police because he (Father) did not have his phone. While not entirely clear from the discussion on the record, the inference was that Jeffrey was testifying about the Second Case because Father testified that he called Jeffrey in the Second Case. The trial court noted that this was not "brought to the direct attention of the jury for the specific reason of not drawing attention to the fact that a second circumstance exists where [Seibert] is charged with another crime for another incident." The trial court then indicated that it did not believe the jury had been tainted or would be unable to reach a fair verdict in light of the other testimony presented. It then offered to give the jury a limiting instruction, which Seibert's

defense counsel declined, reasoning that a limiting instruction would simply draw attention to the improper testimony.

{¶44} We conclude that Seibert has not established that the trial court erred by denying his motion for a mistrial relative to Jeffrey's testimony. Seibert's argument on appeal is more limited than his defense counsel's argument at trial. His limited argument on appeal does not support a conclusion that Jeffrey's testimony was a reference to the Second Case. Even assuming Jeffrey's testimony as cited in Seibert's merit brief was a reference to the Second Case, we conclude that it did not warrant a mistrial under these facts. The reference was brief, and defense counsel did not object during trial. Moreover, defense counsel declined a limiting instruction, reasoning that it would only draw attention to the allegedly improper reference to facts from the Second Case. Given the strength of the remaining testimony presented, we cannot say that Seibert suffered prejudice as a result of this alleged irregularity. *Grether*, 2019-Ohio-4243, at ¶ 25.

{¶45} Lastly, regarding the prosecutor's alleged references to facts from the Second Case during her closing argument, Seibert has not explained what those references were, nor has he provided a citation to the record. *See* App.R. 16(A)(7) (requiring an appellant's brief to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."). When Seibert's defense counsel moved for a mistrial, the prosecutor indicated that, per a discussion in chamber, any reference to the Second Case during her closing argument was inadvertent.

{¶46} We conclude that Seibert has not established that the trial court erred by denying his motion for a mistrial relative to the prosecutor's alleged references to facts from the Second

Case during her closing argument. As previously noted, Seibert has not identified what those references were, nor has he provided a citation to the record in support of his position. The trial transcript indicates that the parties discussed this issue in chambers, but that discussion is not a part on the record on appeal. This Court will not identify, and then evaluate, those allegedly improper references on Seibert's behalf. *State v. Dawson*, 9th Dist. Summit No. 28311, 2017-Ohio-2833, ¶ 15, citing App.R. 16(A)(7) ("This Court will not construct an argument on [the appellant's] behalf.").

{¶47} In light of the foregoing, Seibert's second assignment of error is overruled.

III.

{¶48} Seibert's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, J.
SUTTON, J.
CONCUR.


APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.