[Cite as *State v. Mattle*, 2023-Ohio-1352.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | | C.A. No. 30262 |
| | | |
| Appellee | | |
| | | |
| v. | | APPEAL FROM JUDGMENT |
| | | ENTERED IN THE |
| BRANDI MATTLE | | BARBERTON MUNICIPAL COURT |
| | | COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. 2021 CRB 02732 |

DECISION AND JOURNAL ENTRY

Dated: April 26, 2023

CARR, Judge.

{¶1} Defendant-Appellant Brandi Mattle appeals her conviction from Barberton Municipal Court. This Court affirms.

I.

{¶2} Following a traffic stop on October 13, 2021, Mattle was charged with one count of obstructing official business in violation of Barberton Codified Ordinances 606.14. The matter was tried together with a related traffic case, which is not before us. The trial court found Mattle guilty and sentenced her. Mattle has appealed, raising two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

BRANDI'S CONVICTION[] W[AS] NOT BASED UPON SUFFICIENT EVIDENCE AS A MATTER OF LAW[.]

{¶3} Mattle argues in her first assignment of error that the trial court's finding of guilty on the obstructing official business charge is based upon insufficient evidence.

{¶4} "When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction." *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶5} Barberton Codified Ordinances 606.14(A) provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." *See also* R.C. 2921.31(A) (containing identical language). Barberton Codified Ordinances 606.14(B) indicates that,

> [a]lthough not exclusive, and not limited to, the following may be applied in determining whether a violation of this section has taken place:
>
> (1) Any peace officer may detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit, a crime;
>
> (2) Any peace officer may detain any person the officer encounters under circumstances which reasonably indicate that the person has violated, or is violating, the conditions of his or her parole or probation;
>
> (3) The officer may detain the person pursuant to this section only to ascertain his or her identity and the suspicious circumstances surrounding his or her presence abroad. Any person so detained shall identify himself or herself, but may not be compelled to answer any other inquiry of any peace officer; and/or
>
> (4) A person must not be detained longer than is reasonably necessary to effect the purposes of this section.

**{¶6}** "A person acts purposely when it is the person's specific intention to cause a certain result or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." Barberton Codified Ordinances 606.02(A); *see also* R.C. 2901.22(A).

**{¶7}** "An affirmative act is required in order to support a finding that an individual was guilty of obstructing official business." (Internal quotations and citations omitted.) *State v. Seibert*, 9th Dist. Wayne Nos. 20AP0013, 20AP0014, 2021-Ohio-3069, ¶ 35. "The mere failure to obey a law enforcement officer's request may not amount to obstruction. That said, this Court has stated that failing to comply with an officer's order may constitute obstruction under some circumstances." (Internal quotations and citations omitted.) *Id.* "[A] suspect may indeed obstruct official business when he creates a significant delay by ignoring an officer's repeated orders, thereby impeding the officer's ability to perform his lawful duties." (Internal quotations and citations omitted.) *Id.*

**{¶8}** At trial, the State presented the testimony of two officers, along with a few exhibits, including one of the officer's body camera video, which were admitted into evidence. Mattle and her mother testified in Mattle's defense and also presented a few exhibits which were also admitted. The evidence revealed the following narrative. On October 13, 2021, around 11:30 p.m., Officer Kevin Landals with Barberton Police Department was on patrol in a marked cruiser. Officer Landals was en route to back up another officer at a traffic stop when he encountered an SUV stopped between two sets of railroad tracks. Officer Landals saw that the driver, Mattle, was on her cell phone. Officer Landals flashed his alley lights at the car to get her attention. Mattle rolled down her window and Officer Landals noticed that she had red, watery eyes. Officer Landals told Mattle she could not be stopped there. Mattle apologized and indicated she had not

been there before.  Officer Landals left the scene to proceed to the traffic stop.  Officer Landals learned that another officer was at the traffic stop and so Officer Landals decided to turn around and further investigate Mattle's vehicle.

{¶9}    Officer Landals passed over the railroad tracks, turned on Norton Avenue, and noticed the SUV straddling the straight and right turn lanes.  He observed Mattle talking with people on the sidewalk.  Officer Landals turned around, got behind Mattle's vehicle and initiated a traffic stop for a marked lanes violation.  Officer Landals observed that Mattle had a dog in the car with her.

{¶10}  Officer Landals found Mattle to be confrontational.  He noticed an odor of an alcoholic beverage as soon as he began talking to her at the car window.  Mattle denied having any alcohol.  Office Landals asked for Mattle's driver's license, and she produced a real estate license and a credit card.  Ultimately, she did produce her license.  Mattle told Officer Landals that she knew people and that she was going to call other people.

{¶11}  Officer Landals asked Mattle to recite the alphabet and Mattle questioned why she was being asked to do that.  Mattle repeated the letters T, U, and V a few times before making it through the alphabet.  Officer Landals then asked Mattle to count backwards from 59 to 39.  Mattle again became agitated, grabbed her phone, and insisted she was going to be calling people.  Officer Landals informed Mattle that she could not make phone calls during the traffic stop.

{¶12}  At that point, Officer Landals told Mattle to get out of the vehicle.  Mattle then put the vehicle in drive.  Officer Landals attempted to open the door from the outside, but it was locked.  Officer Landals reached inside to open the lock and Mattle put the car in park and began to roll up the window saying that she was going to roll up his hands in the window.

{¶13} Officer Landals unlocked the vehicle and began to pull her out and Mattle attempted to bring the dog with her. Officer Landals told her to put the dog down. Eventually Mattle was placed under arrest and put in the cruiser.

{¶14} Officer Landals explained why he believed that Mattle was obstructing official business: "We have on a traffic stop we are legally allowed to ask somebody to step out of the vehicle. When I did that, she put her car in drive which I took as an action to attempt to flee from the traffic stop. She refused the lawful order to step out of the vehicle and forced me to hold her window down instead of getting my hands rolled up to complete this lawful action of getting her out of the vehicle."

{¶15} Officer David Denson provided back up to Officer Landals at the traffic stop of Mattle. Officer Denson approached the passenger side of the vehicle. Officer Denson heard Mattle arguing with Officer Landals and then heard Officer Landals ask Mattle to step out of the vehicle. Officer Denson testified that Mattle then "put her car in drive and tried to roll her window up and take off." Officer Denson tried to open the passenger door to get into the vehicle to put it in park and then came over to the driver's side to try and assist Officer Landals.

{¶16} Mattle's mother and Mattle testified for the defense. Mattle's mother's testimony largely related to the traffic case that is not before this Court. Mattle testified that she has not had a drink since March 2021 and was not drinking that evening. Mattle testified that she got into an argument with her boyfriend and then drove to her mother's house to pick up her dog. She talked to her mother for a while and then left. She indicated that, at the railroad tracks, she was trying to organize some things after the dog had knocked over her purse. Officer Landals came by and told her that she could not be parked there. Mattle proceeded on but then was stopped again. Mattle described being anxious. Mattle admitted to being very rude and oppositional towards the officer.

She indicated that she did not understand why she was being stopped and was concerned about being accused of something she had not done. She was also worried her ex-husband would use the traffic stop against her in their custody dispute.

{¶17} Mattle maintained that she did not put her car in drive; instead, the car was already in drive. Additionally, she asserted that she was rolling the window up to keep the dog from getting out of the car. Nonetheless, she agreed that she told the officer that she would shut his hands in the door.

{¶18} On appeal, Mattle argues that her actions did not illustrate that she acted with purpose to obstruct or delay the officers in the performance of their duties. Mattle maintains that she could have fled but did not. Thus, Mattle was available for questioning, and she did not substantially hinder the officers in the performance of their duties.

{¶19} However, in viewing the evidence in a light most favorable to the prosecution, we conclude that sufficient evidence was presented that, if believed, showed that Mattle acted with the purpose to prevent, obstruct, or delay the officers in the performance of their duties and that her actions did hamper them in doing so. *See* Barberton Codified Ordinances 606.14(A). There was evidence that Mattle refused to get out of the vehicle when ordered to do so, put the car in drive, and attempted to roll up her window on the officer's hand. From these actions, it could be inferred that Mattle was attempting to flee. This Court has noted that attempting to flee can amount to obstructing official business. *See State v. Johnson*, 9th Dist. Summit No. 26914, 2014-Ohio-2856, ¶ 17. Additionally, the affirmative act of rolling up the window while the officer's hand was in the vehicle was also obstructive as he was trying to remove Mattle from the vehicle. And while, "[b]efore it can be concluded that an officer was hampered or impeded, there must be some substantial stoppage of the officers' progress * * *, there is no finite period of time [that] constitutes

a substantial stoppage, * * *." (Internal quotations and citations omitted.) *State v. Gillam*, 2d Dist. Montgomery No. 27998, 2019-Ohio-808, ¶ 19. "If the record demonstrates that the defendant's act hampered or impeded the officer in the performance of his duties, the evidence supports the conviction. [T]his element does not require that [the defendant] cause the officers to fail in their duties, but only that, by acting, [the defendant] disrupted their performance of them." (Internal quotations and citations omitted.) *Id.* Here, Mattle's actions temporarily but substantially impeded the officers in removing her from the vehicle. Mattle has not demonstrated that her conviction is based upon insufficient evidence.

{¶20} Mattle's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

BRANDI'S CONVICTION[] W[AS] AGAINST THE MANIFEST WEIGHT OF
THE EVIDENCE[.]

{¶21} Mattle argues in her second assignment of error that her conviction was against the weight of the evidence.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶22} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence

only in exceptional cases. *Otten* at 340. "[W]e are mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 20. "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id*.

{¶23} Mattle asserts that her testimony was more credible and that she therefore lacked the mens rea to obstruct. Specifically, she points out that she testified that she did not put the car in drive; instead, it was in drive the entire time. She also notes that she testified that she rolled up her window to keep her dog from jumping out of the vehicle. Additionally, Mattle argues that, even if she did put the car in drive, there was no evidence that the car moved, and thus the evidence does not support that she attempted to flee or that she hindered the officers in the performance of their duties.

{¶24} Here, we cannot say that the trier of fact lost its way in its credibility determinations. Both officers testified that Mattle put the car in drive. Nonetheless, Mattle maintains that their testimony is inconsistent, and therefore less credible, in that one of the officers testified that the act of placing the car in drive was an attempt to flee, while the other stated that Mattle attempted to take off. However, we cannot say that the officers' testimony is inherently inconsistent or raises credibility issues. Any differences in their testimony can be easily accounted for as simply different ways of describing the same scene given that they are two different individuals with two different vantage points. Moreover, even Mattle acknowledged that she told the officer that she was going to shut his hands in the door, thereby making her testimony that she rolled up the window to keep her dog from jumping from the vehicle less credible.

**{¶25}** The fact that Mattle did not move the vehicle after putting it in drive does not negate the evidence that Mattle both put the vehicle in drive and rolled up the window while telling the officer that she was going to shut his hands in the door. The totality of the evidence supports that Mattle, at the very least, was considering flight; the fact that she was unsuccessful in fleeing or reconsidered fleeing is not determinative. Mattle's actions did hamper and impede the officers in removing Mattle from the vehicle and her actions also provide support for the conclusion that Mattle had the purpose to hamper and impede the officer's actions.

**{¶26}** Considering the totality of the evidence presented, we cannot say that Mattle has demonstrated that the trier of fact lost its way and created a manifest miscarriage of justice in finding her guilty of obstructing official business.

**{¶27}** Mattle's second assignment of error is overruled.

III.

**{¶28}** Mattle's assignments of error are overruled, and the judgment of the Barberton Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

SUTTON, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

WESLEY C. BUCHANAN, Attorney at Law, for Appellant.

KELLY L. PARKER, Assistant Prosecuting Attorney, for Appellee.