[Cite as *State v. Miller*, 2023-Ohio-1466.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.      30335 |
|     Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARCELLARS S. MILLER, JR. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
|     Appellant | CASE No.      CR 21 03 1046 |

DECISION AND JOURNAL ENTRY

Dated: May 3, 2023

FLAGG LANZINGER, Judge.

{¶1}   Marcellars Sinua Miller, Jr. appeals his convictions and sentence from the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2}   This appeal involves the non-fatal shooting of two victims: A.W. and T.L. As a result of the shooting, a grand jury indicted Mr. Miller on several counts. Relevant to this appeal, a grand jury indicted Mr. Miller on two counts of felonious assault (one related to A.W. and one related to T.L., both with accompanying firearm specifications), attempted murder (related to A.W. and also with an accompanying firearm specification), and having a weapon while under a disability. The matter proceeded to a multi-day jury trial wherein the following evidence was adduced.

{¶3}   One of the victims, T.L., is Mr. Miller's sister. At the time of the underlying incident, T.L. was close friends with A.W. According to A.W.'s testimony at trial, in the early

morning hours of March 21, 2021, she, T.L., and K.L. (T.L. and Mr. Miller's mother) decided to go to an after-hours house on Greenwood Avenue in Akron. A.W. explained that an after-hours house is a house that people go to after the bars have closed where you can buy and drink alcohol. Because everyone besides Mr. Miller had been drinking alcohol, Mr. Miller drove everyone to the after-hours house in A.W.'s car. Upon arriving, A.W. and T.L. drank more alcohol, listened to music, and danced in the basement until around 5:00 a.m. At some point, Mr. Miller and K.L. (his mother) got into a verbal argument and a physical fight. A.W. and T.L. briefly broke up the fight, but Mr. Miller and K.L. started fighting again. At that point, A.W. decided that she wanted to leave and invited T.L. to leave with her.

{¶4} A.W. testified that when she and T.L. started to walk up the basement steps, Mr. Miller called them "bitches" and threatened to shoot them. According to A.W., Mr. Miller had a gun and said: "If you all leave me, I'm going to shoot y'all. I'm going to shoot that bitch up." A.W. testified that once they got outside, Mr. Miller said: "If you leave me I'm going to shoot you in your head." A.W. and T.L. then ran toward A.W.'s car. A.W. got into the driver's seat and started the car while T.L. got into the passenger's seat. A.W. testified that before she put the car into drive, she looked in her rear-view mirror and saw Mr. Miller standing behind her car holding a gun. A.W. testified that she did not remember getting shot, but that T.L. started screaming and called 911. A.W. then drove her car a short distance to her grandmother's house on Courtland Avenue.

{¶5} The State played a recording of T.L.'s 911 call at trial. In it, T.L., who was crying and screaming, informed the 911 dispatcher that her friend had been shot and that she thought she (T.L.) had been grazed. The 911 dispatcher then asked T.L. who the shooter was, and T.L. responded that it was her brother, Marcellars Miller. T.L. explained during the 911 call that the

shooting occurred while they were leaving a party. T.L. then gave the 911 dispatcher a physical description of Mr. Miller.

{¶6} Officers located A.W. and T.L. in A.W.'s car on Courtland Avenue. The officers observed that A.W.'s car was "riddled with bullet holes" and that A.W. had been shot. T.L. had suffered grazing wounds. T.L. told the officers that Mr. Miller was the shooter and gave the officers a description of Mr. Miller's clothing. The State played the bodycam video from one of the officers who responded to Courtland Avenue at trial. In it, T.L. is seen crying and telling the officers that her brother, Marcellars Miller, got mad at an after-hours party and shot her and A.W.

{¶7} Officers located Mr. Miller a short distance away on a porch on Hardesty Boulevard. K.L. (T.L. and Mr. Miller's mother) was also on the porch. Officers located a gun wedged between the railings on the porch, which K.L. claimed was her gun. Officers secured the gun, arrested Mr. Miller, and transported him to the police station for questioning. During his interview with a detective, Mr. Miller denied being with A.W. and T.L. at the time of the shooting. Instead, Mr. Miller claimed that he had gone to a bar with his mother, and that he had just arrived at the house on Hardesty Boulevard when the police arrived and arrested him.

{¶8} Officers discovered several shell casings in and around the driveway of the after-hours house on Greenwood Avenue. A forensic scientist who specializes in firearms examined the gun and testified that the shell casings located on Greenwood Avenue were consistent with having been fired from the gun located on Hardesty Boulevard. A forensic scientist who specializes in DNA testified that there was not enough DNA present on the shell casings to perform a DNA comparison. That forensic scientist also testified, in simple terms, that there was too much DNA on the gun to perform a DNA comparison. As a result, that expert could not testify within a reasonable degree of scientific certainty whether Mr. Miller had handled the shell casings or the

gun. A forensic scientist who performed a gunshot residue ("GSR") test, however, testified that both of Mr. Miller's hands tested positive for GSR.

{¶9}   A.W. received treatment for a gunshot wound to her lung, and T.L. received treatment for grazing wounds. According to the treating trauma surgeon, the doctors made the decision not to remove the bullet from A.W.'s lung because the risks of removing it outweighed the risks of not removing it. The trauma surgeon explained that they inserted a tube into A.W.'s chest to drain the excess air and fluid, and that A.W. remained hospitalized for five days.

{¶10}   Officers interviewed T.L. and A.W. while they were at the hospital. The State played the bodycam video of those interviews at trial without any objection from Mr. Miller's trial counsel. During the officers' interview with T.L., T.L. explained that she, A.W., K.L., and Mr. Miller went to an after-hours house together. T.L. explained that Mr. Miller became aggressive and started pushing them around, so A.W. decided she wanted to leave. T.L. stated that Mr. Miller threatened that he would shoot her and A.W. if they left, and that Mr. Miller started shooting at them when they got into A.W.'s car. T.L. stated that she saw Mr. Miller with the gun, and that there was no one else outside at the time of the shooting.

{¶11}   During the officers' interview with A.W., A.W. explained that Mr. Miller drove them to the after-hours house, and that Mr. Miller threatened to shoot her and T.L. if they left. A.W. stated that she thought Mr. Miller might have been upset because T.L. was talking to a man at the after-hours house. A.W. explained that she decided to leave after Mr. Miller threatened to shoot her, and that Mr. Miller followed her and T.L. outside. A.W. stated that she and T.L. got into the car, and that she looked back and saw Mr. Miller standing behind her car pointing a gun at them. A.W. explained that everything happened very quickly, and that the rest of the night was a blur.

{¶12} After the close of the State's case-in-chief, Mr. Miller's trial counsel moved for acquittal under Crim.R. 29, which the trial court denied. Mr. Miller did not present any evidence on his own behalf. The jury ultimately found Mr. Miller guilty of two counts of felonious assault and the two accompanying firearm specifications, having a weapon while under a disability, and attempted murder with the accompanying firearm specification.

{¶13} At sentencing, the trial court concluded that one of the felonious-assault counts merged with the attempted-murder count because those counts involved the same victim: A.W. The State elected to proceed with sentencing on the attempted-murder count. The trial court then sentenced Mr. Miller to an indefinite prison term of five to seven and one-half years for the remaining felonious-assault count, an indefinite prison term of six to nine years for the aggravated-murder count, and a prison term of two years for the weapon-while-under-a-disability count, all of which the trial court ran concurrently. The trial court also sentenced Mr. Miller to two consecutive three-year prison terms for the remaining firearm specifications, for a total prison term of a minimum of 12 years and a maximum of 15 years. Mr. Miller now appeals his convictions and sentence, raising five assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

> IT IS PLAIN ERROR FOR THE COURT TO ALLOW TO BE PLAYED TO THE JURY, AND TO ADMIT INTO EVIDENCE, THE TESTIMONIAL VIDEO STATEMENT OF VICTIM TL WHO WAS INTERVIEWED BY THE POLICE IN THE HOSPITAL AS IT WAS A DENIAL OF CONFRONTATION FOR MARCELLARS MILLER, JR. AND THUS A VIOLATION OF HIS CONSTITUTIONAL RIGHTS TO CONFRONT HIS WITNESSES AGAINST HIM.

{¶14} In his first assignment of error, Mr. Miller argues that the trial court committed plain error by admitting the six-minute bodycam video of T.L.'s hospital interview into evidence

when T.L. did not testify at trial. Mr. Miller argues that the statements T.L. made in the video were inadmissible hearsay that were testimonial in nature, and that they corroborated A.W.'s version of the events. Mr. Miller argues that the admission of the video violated his rights under the Confrontation Clause.

{¶15}  Crim.R. 52(B) permits this Court to notice plain errors or defects that affected a substantial right in the absence of an objection in the trial court. Under Crim.R. 52(B), "the *defendant* bears the burden of demonstrating that a plain error affected his substantial rights." (Emphasis in original.) *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14; *see also State v. LaRosa*, 165 Ohio St.3d 346, 2021-Ohio-4060, ¶ 40. This Court can only notice plain error when there has been a deviation from a legal rule that constitutes an obvious defect in the trial proceedings that affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). This Court notices plain error only in exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶16}  The Sixth Amendment to the United States Constitution guarantees an accused the right to confront witnesses against him. *Crawford v. Washington*, 541 U.S. 36, 54 (2004). The Confrontation Clause is implicated by the admission of out-of-court statements that are testimonial in nature when the declarant does not testify in the proceeding. *See Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 309-310 (2009). Only testimonial statements make a declarant a "witness" for purposes of the Confrontation Clause, and "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006).

**{¶17}** Initially, this Court notes that Mr. Miller has not identified any specific statements that T.L. made in the bodycam video in support of his assignment of error. Instead, he generally asserts that T.L.'s statements were "much more detailed and expansive to the statements made of AW[,]" and that they corroborated A.W.'s version of the events. Additionally, instead of identifying any specific statements from T.L., Mr. Miller cites the interviewing officer's testimony at trial wherein the officer testified that T.L. told him that Mr. Miller "got mad with people inside [the after-hours house]. He started pushing us around, like he always does. So just being aggressive with her and her mom." Mr. Miller acknowledges that the record reflects that the State only played a portion of the video, and that the record does not make clear which portion the State played. He argues, however, that since it is unclear which portion the State played, the trial court should not have admitted the entire bodycam video into evidence.

**{¶18}** Having reviewed the record, this Court concludes that Mr. Miller has failed to establish that the trial court committed plain error. This Court's review of the bodycam video from T.L.'s hospital interview indicates that T.L. identified Mr. Miller as the shooter and explained that they had been to a party that evening. T.L. explained that Mr. Miller became upset at the party and started pushing people around, which–according to T.L.–Mr. Miller had done in the past. T.L. also explained that A.W. decided to leave the party, and that Mr. Miller threatened to shoot her and A.W. T.L. further explained that she got into the car with A.W., that Mr. Miller was behind the car, and that Mr. Miller started shooting at them.

**{¶19}** Even assuming that a Confrontation-Clause violation occurred, any error in the admission of the bodycam video from T.L.'s hospital interview was harmless because "'the probable impact' of the statements 'on the minds of an average jury' was negligible." *State v. McKelton,* 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 192, quoting *Harrington v. California*, 395

U.S. 250, 254 (1969). Other evidence presented at trial (including T.L.'s 911 call and an officer's bodycam video from Courtland Avenue containing T.L.'s statements to the officers almost immediately after the shooting) also indicated that T.L. identified Mr. Miller as the shooter. The statements T.L. made during the hospital interview were cumulative of that evidence. *See State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 130 (recognizing that the admission of evidence that is "merely cumulative" of other evidence, the admissibility of which was not challenged, does not amount to plain error). Additionally, A.W. identified Mr. Miller as the shooter and testified that he became aggressive at the after-hours house. *See id.*

{¶20} While T.L. did mention during the hospital interview that Mr. Miller pushed her and A.W. around at the after-hours house and that Mr. Miller had done so in the past, Mr. Miller has not established that, but for the admission of those statements, the result of the trial would have been different, and that reversal is necessary to prevent a manifest miscarriage of justice. *In re Z.S.*, 9th Dist. Summit No. 29887, 2021-Ohio-2022, ¶ 8, quoting *In re S.G.*, 9th Dist. Summit No. 27428, 2015-Ohio-2503, ¶ 11 ("In the criminal context, plain error does not exist unless it can be said that but for the error, the outcome of the trial would have been different and that reversal is necessary to prevent a manifest miscarriage of justice."). Accordingly, Mr. Miller has failed to establish plain error. Mr. Miller's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT MILLER WAS THE SHOOTER OF A GUN AND OR KNOWINGLY CAUSED OR ATTEMPTED TO CAUSE PHYSICAL HARM AND OR THAT HE USED A GUN AS ALLEGED IN THE GUN SPECIFICATIONS AND THUS THERE IS INSUFFICIENT EVIDENCE FOR THE JURY VERDICTS AND THE COURT ERRED IN DENYING THE DEFENDANT'S RULE 29 MOTION.

**{¶21}** In his second assignment of error, Mr. Miller argues that the State failed to present sufficient evidence to support his convictions because the State failed to prove beyond a reasonable doubt that he was the shooter, that he knowingly caused or attempted to cause physical harm to the victims, or that he used a gun on the night of the incident. This Court notes that Mr. Miller's second assignment of error challenges, in part, the weight of the evidence presented at trial. Mr. Miller's captioned assignment of error, however, is limited to the sufficiency of the evidence. This Court will limit its review accordingly. *State v. Williams*, 9th Dist. Summit No. 29547, 2021-Ohio-2491, ¶ 15 (declining to address arguments that fall outside the scope the appellant's captioned assignment of error).

**{¶22}** "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.* The trier of fact is entitled to rely on direct, as well as circumstantial evidence. *See id.*

**{¶23}** Relevant to the arguments raised in this assignment of error, the jury found Mr. Miller guilty of felonious assault under R.C. 2903.11(A)(2) and attempted murder under R.C. 2923.02 (attempt) and R.C. 2903.02(B) (murder). Regarding felonious assault, R.C. 2903.11(A)(2)

provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another[.]" Regarding attempt, R.C. 2923.02(A) provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." Regarding murder, R.C. 2903.02(B) provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence * * *."

{¶24}  As noted, Mr. Miller argues that the State failed to present sufficient evidence to establish that he was the shooter, that he knowingly caused or attempted to cause physical harm to the victims, or that he used a gun on the night of the incident. He argues, in part, that without the admission of T.L.'s hospital interview into evidence, the testimony of A.W. alone was insufficient to sustain his convictions. In evaluating the sufficiency of the evidence, however, this Court considers all of the evidence that the State presented, regardless of any alleged error in its admission. *State v. Meinke*, 9th Dist. Lorain No. 15CA010738, 2017-Ohio-7787, ¶ 10, quoting *State v. Vanni*, 182 Ohio App.3d 505, 2009-Ohio-2295, ¶ 15 (9th Dist.) ("Because the State cannot retry a defendant following a reversal on the sufficiency of the evidence, 'the interest in the administration of justice dictates that the appellate court review the issue of sufficiency in consideration of all evidence presented by the [S]tate in its case in chief, whether such evidence was properly admitted or not.'"). Moreover, as the Ohio Supreme Court has recognized, the testimony of one witness, if believed, is sufficient to prove a fact. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, ¶ 177.

{¶25}  Regarding the State's evidence establishing that Mr. Miller used a gun and shot at A.W. and T.L., the State presented: (1) testimony from A.W., who testified that she saw Mr. Miller with a gun, that Mr. Miller shot her, and that she sustained a bullet wound to her lung; (2) T.L.'s

911 call wherein T.L. identified Mr. Miller as the shooter; (3) bodycam video from the officers who responded to Courtland Avenue (i.e., where T.L. and A.W. were still in A.W.'s car almost immediately after the shooting) wherein T.L. identified Mr. Miller as the shooter; (4) evidence indicating that A.W. received treatment for a bullet wound to her lung and that T.L. received treatment for grazing wounds; (5) the results of the GSR test indicating that Mr. Miller had GSR on both of his hands; and (6) testimony from a forensic scientist indicating that the shell casings discovered at the scene of the shooting were consistent with having been fired from the gun located on the porch of the house on Hardesty Avenue (i.e., where the police found and arrested Mr. Miller). Viewing this evidence in a light most favorable to the State, this evidence allowed the jury to reasonably conclude that Mr. Miller used a gun on the night of the incident and that he shot at A.W. and T.L. *See Jackson*, 443 U.S. at 319; *Jenks*, 61 Ohio St.3d at 273.

{¶26} Regarding Mr. Miller's argument that the State failed to present sufficient evidence to prove that he knowingly caused or attempted to cause physical harm to the victims, a person acts "knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶27} Here, the State presented evidence indicating that Mr. Miller fired several shots at A.W.'s car, striking A.W. and grazing T.L. As this Court has acknowledged, "[e]vidence that a defendant fired a gun in a person's direction is sufficient evidence that the defendant acted knowingly for the purpose of a felonious assault conviction." (Alteration sic.) *State v. Ivery*, 9th Dist. Summit No. 28551, 2020-Ohio-3349, ¶ 13, quoting *State v. Fox*, 10th Dist. Franklin No. 17AP-295, 2018-Ohio-501, ¶ 14. That evidence is also sufficient for a jury to infer that the defendant intended to cause death. *See Ivery* at ¶ 15; *State v. Guice*, 9th Dist. Lorain No.

16CA011054, 2017-Ohio-9295, ¶ 31 (holding that the defendant's conviction for attempted murder was supported by sufficient evidence because the evidence indicated that the defendant fired several shots in the direction of a police cruiser, knowing that there was an officer behind the wheel); *In re F.D.*, 8th Dist. Cuyahoga No. 102135, 2015-Ohio-2405, ¶ 25 ("Ohio courts have consistently held that shooting a gun in a place where there is a risk of injury to one or more persons supports the inference that the offender acted knowingly."). Mr. Miller's argument, therefore, lacks merit.

**{¶28}** In light of the foregoing, Mr. Miller's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE COURT ERRED IN ORDERING CONSECUTIVE SENTENCES ON THE GUN SPECIFICATION WHEN IT ORDERED CONCURRENT TIME ON THE UNDERLYING FELONIES.

**{¶29}** In his third assignment of error, Mr. Miller argues that the trial court erred by imposing consecutive sentences on the firearm specifications when the trial court imposed concurrent sentences on the underlying offenses. This Court disagrees.

**{¶30}** In reviewing a felony sentence, "[t]he * * * standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence" that: (1) "the record does not support the trial court's findings under relevant statutes[,]" or (2) "the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶31}  As this Court has explained, "[i]n the instance of multiple firearm specifications, a defendant generally will be subject to only one three-year sentence 'for felonies committed as part of the same act or transaction.'" *State v. Ross*, 9th Dist. Lorain No. 21CA011729, 2023-Ohio-1185, ¶ 63, quoting *State v. Rouse*, 9th Dist. Summit No. 28301, 2018-Ohio-3266, ¶ 10. "The general rule does not apply, however, when R.C. 2929.14(B)(1)(g) controls." *Id.* R.C. 2929.14(B)(1)(g) provides:

> If an offender is convicted of * * * two or more felonies, if one or more of those felonies are * * * attempted murder [or] * * * felonious assault * * *, and if the offender is convicted of * * * a [firearm] specification * * * in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted * * * and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

"Thus, under R.C. 2929.14(B)(1)(g), a trial court is required to order consecutive service of a defendant's specifications." *Ross* at ¶ 63, quoting *Rouse* at ¶ 10.

{¶32}  Here, the jury found Mr. Miller guilty of a firearm specification in connection with his conviction of attempted murder. The jury also jury found Mr. Miller guilty of a firearm specification in connection with his conviction of felonious assault. Under R.C. 2929.14(B)(1)(g), the trial court properly imposed a three-year prison term on each specification, and properly ordered those three-year terms to run consecutively. *Ross* at ¶ 64. The fact that the trial court imposed concurrent sentences on the convictions for attempted murder and felonious assault does not affect that conclusion. *See State v. Bollar*, Slip Opinion No. 2022-Ohio-4370, ¶ 13, 25 (holding that R.C. 2929.14(B)(1)(g) allows a trial court to impose sentences for multiple firearm specifications for felonies that were committed as part of the same act or transaction when the underlying offenses have been merged). Mr. Miller's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE VERDICT AND CONVICTION IS AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE AS THE JURY CLEARLY LOST ITS WAY AND THUS
CREATED A MANIFEST MISCARRIAGE OF JUSTICE.

{¶33} In his fourth assignment of error, Mr. Miller challenges the manifest weight of the evidence. When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶34} Initially, this Court notes that aside from providing the standard of review for the manifest weight of the evidence, Mr. Miller has not supported his assignment of error with citations to legal authority, nor has he provided any citations to the record. *See* App.R. 16(A)(7). Instead, he summarily asserts that without the admission of the bodycam video of T.L.'s hospital interview, the jury would not have found him guilty. Mr. Miller also summarily asserts that A.W.'s testimony and the physical evidence do not support his convictions. Regarding the latter, Mr. Miller asserts that without DNA evidence or fingerprints on the gun, there can be no proof beyond a reasonable doubt.

{¶35} Having reviewed the record, this Court concludes that Mr. Miller's challenge to the manifest weight of the evidence lacks merit. As summarized in this Court's recitation of the evidence presented at trial, A.W. testified that Mr. Miller threatened to shoot her and T.L. A.W. also testified that she saw Mr. Miller standing behind her car with a gun immediately prior to the

shooting. Additionally, the State played T.L.'s 911 call for the jury. In it, T.L., who was screaming and crying, identified Mr. Miller as the shooter. The State also played the bodycam video of an officer who responded to Courtland Avenue wherein T.L., almost immediately after the shooting, identified Mr. Miller as the shooter. The State also presented evidence indicating that A.W.'s car was shot several times, and that the shell casings located at the scene were consistent with having been fired from the gun found on the porch of the house where officers located and arrested Mr. Miller. The State also presented the results of the GSR test, which indicated that Mr. Miller tested positive for GSR.

{¶36} Here, the jury chose to believe the State's version of the events, which is not a basis for reversal. *State v. Bersch*, 9th Dist. Wayne No. 20AP0018, 2021-Ohio-3957, ¶ 16. Having reviewed the record, this Court concludes that this is not the exceptional case in which the evidence weighs heavily against Mr. Miller's convictions. *Id.* Mr. Miller's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

MARCELLARS MILLER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION.

{¶37} In his fifth assignment of error, Mr. Miller argues that his trial counsel rendered ineffective assistance. This Court disagrees.

{¶38} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, Mr. Miller must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) that "the deficient performance prejudiced the defense." *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, Mr. Miller must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138. As the Ohio Supreme Court has acknowledged, "[a] defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000), citing *Strickland* at 697.

{¶39} In support of his assignment of error, Mr. Miller first asserts that his trial counsel rendered ineffective assistance by not objecting to the admission of T.L.'s hospital interview. This Court, however, has already determined in our resolution of Mr. Miller's first assignment of error that any error in that regard did not affect the outcome of the trial. Mr. Miller, therefore, cannot establish prejudice.

{¶40} Next, Mr. Miller asserts that his trial counsel rendered ineffective assistance by failing to support his Rule 29 motion for acquittal with specific arguments. Mr. Miller, however, has not explained what argument(s) his trial counsel should have made. "[T]his Court will not 'guess at undeveloped claims on appeal' or construct arguments to support an assignment of error." *State v. Meyerson*, 9th Dist. Summit No. 30260, 2023-Ohio-708, ¶ 43, quoting *State v. Beverly*, 9th Dist. Summit No. 28627, 2019-Ohio-957, ¶ 6. This Court, therefore, rejects Mr. Miller's argument in this regard.

{¶41} Lastly, Mr. Miller asserts that his trial counsel rendered ineffective assistance by failing to "scrutinize the gun specification statute so as to make argument for consecutive mandatory gun spec terms[.]" This Court, however, has already determined in our resolution of

Mr. Miller's third assignment of error that the trial court did not err when it imposed consecutive sentences for the firearm specifications. As a result, Mr. Miller's argument in this regard lacks merit.

{¶42} In light of the foregoing, Mr. Miller's fifth assignment of error is overruled.

III.

{¶43} Mr. Miller's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
STEVENSON, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.