[Cite as *State v. Preston*, 2024-Ohio-5588.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.  30862 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| | COURT OF COMMON PLEAS |
| DEANGELO PRESTON | COUNTY OF SUMMIT, OHIO |
| | CASE No.  CR-2021-11-4101 |
| Appellant | |

DECISION AND JOURNAL ENTRY

Dated: November 27, 2024

FLAGG LANZINGER, Judge.

**{¶1}** Deangelo Preston appeals his convictions from the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

**{¶2}** Shortly before midnight on July 18, 2021, Preston called 911 and informed the dispatcher that he "shot somebody on accident." After calling 911, Preston asked his friends to shoot him, but they refused. Preston then shot himself in the chin, causing a non-fatal injury.

**{¶3}** When the police arrived, they observed Preston in the front yard. The police observed his friend, N.L., in the back yard. N.L. had sustained two gunshot wounds to the head and was pronounced dead at the scene. EMS transported Preston to the hospital where he received treatment for his injuries.

**{¶4}** A grand jury indicted Preston on counts for murder in violation of R.C. 2903.02(A), felonious assault in violation of R.C. 2903.11(A)(2), felony murder in violation of R.C.

2903.02(B), and reckless homicide in violation of R.C. 2903.041(A). Each count contained a firearm specification under R.C. 2941.145(A). Preston pleaded not guilty. The matter proceeded to a jury trial wherein the following evidence was adduced.

{¶5} The State presented testimony from nine witnesses, two of whom were with N.L. and Preston on the night of the shooting. One of the witnesses was N.L.'s cousin, H.H. According to H.H., she, N.L., Preston, and two other friends were "hanging with each other" at a friend's house on the night of the shooting. H.H. testified that some of the people were drinking alcohol, including Preston. H.H. described Preston as "really drunk."

{¶6} H.H. testified that N.L. left the house at one point and was gone for about an hour and a half. H.H. testified that she heard a knock at the back door while N.L. was gone, which she assumed was N.L. returning to the house. H.H. testified that Preston picked up his gun after hearing the knock at the back door. Preston and another friend, K.B., then went to the back door and asked: "Who is it?" H.H. testified that she heard a gunshot and started laughing because she thought Preston accidentally fired his gun. H.H. then heard screaming and Preston saying he was sorry and "[h]e didn't mean to do it." H.H. immediately went to the back door and saw N.L. bleeding and falling down the porch steps into the back yard.

{¶7} Preston then approached H.H. and asked her to shoot him, but she refused. H.H. testified that Preston then shot himself in the chin. After shooting himself, Preston walked outside to the front yard. Preston remained outside until the police arrived.

{¶8} K.B. also testified at trial. According to K.B., he, Preston, N.L., and two other friends were listening to music and enjoying their evening on the night of the shooting. K.B. testified that everyone except him was drinking alcohol, and that Preston was drunk.

**{¶9}** K.B. testified that he did not know N.L. had left the house when he heard a knock at the back door. K.B. testified that Preston picked up his gun, and that he and Preston went to the back door to see who was there. K.B. testified that he asked: "Who is it?" three times, but no one responded. K.B. then "heard the gun go off." K.B. testified that Preston shot the gun, but that he did not see him shoot it because he was standing in front of Preston. K.B. then opened the back door and saw N.L.'s body. K.B. testified that he exited the house and paced back and forth in the front yard until the police arrived. One of the responding officers described K.B. as being "utterly shocked" and "in complete disbelief" when the police arrived.

**{¶10}** The State presented bodycam footage containing K.B.'s statements to the police on the night of the shooting. The footage reflects that K.B. told the police that Preston: "[was] answering the door, he shoots the gun off on accident, hits the girl, and he just shot himself . . . He's drunk and he touched the gun to the door and then shot . . . the girl on the back porch. Now he just shot himself because he's tweaking, he's tripping."

**{¶11}** The State also presented testimony from the responding officers. Officers described the scene as chaotic and testified that everyone appeared shocked and confused. Officers also testified that Preston was bleeding profusely in the front yard, and that N.L.'s body was at the bottom of the porch steps in the back yard. Officers further testified that they observed two bullet holes in the back door, and that they retrieved an AK-style rifle from inside the house. There was no dispute that the gun belonged to Preston, and that it was the gun used in the shooting.

**{¶12}** A detective testified that the gun was operable, that it had a safety mechanism, and that it appeared to be semiautomatic. The detective testified that he did not test the trigger pull of the gun (i.e., the amount of force applied to the trigger for the gun to fire), but that it would

generally be between six to ten pounds of pressure. The detective testified that he test fired the gun, which required him to apply force to the trigger for the gun to fire.

{¶13} The State also presented testimony from a forensic pathologist who testified that N.L. sustained two gunshot wounds. The forensic pathologist also testified that N.L.'s cause of death was a gunshot wound to the head.

{¶14} Finally, the State presented testimony from N.L.'s grandmother. N.L.'s grandmother testified that she had heard that Preston and N.L. were in a relationship, but that she had never witnessed it. N.L.'s grandmother also testified that N.L. was in the process of finding a place to stay and "get her kid back" at the time of her death. N.L.'s grandmother further testified that N.L.'s daughter had been adopted since N.L.'s death.

{¶15} The defense presented testimony from two witnesses: Preston and his mother. Preston's mother testified that Preston's best friend was killed in the same neighborhood in 2017, which caused Preston to suffer from stress and anxiety. Preston's mother also testified that Preston spent more than 30 days in the hospital for treatment of his self-inflicted gunshot wound to his chin, followed by weeks of rehabilitation.

{¶16} Preston then testified on his own behalf. According to Preston, he and N.L. were good friends and previously shared an intimate relationship. Preston testified that he had been drinking the day of the shooting, and that he was having a good evening.

{¶17} Preston testified that he did not realize N.L. had left the house when he heard a knock at the back door. Preston acknowledged that he thought there was possibly "trouble on the other side of the door." Preston described the neighborhood as "terrible[,]" and explained that the house had been broken into in the past. Preston also testified that his friend had previously been killed in the same neighborhood.

{¶18} Preston testified that he picked up his gun after hearing the knock at the back door. Preston and K.B. then went to the back door and K.B. asked who was there, but no one responded. Preston testified that he then "accidentally shot and killed somebody." Preston explained that he "wasn't careless, but [he] was moving too fast . . . ." Preston testified that K.B. yelled at him for shooting through the door, and that he said: "My bad. I'm sorry for shooting the firearm." Preston testified that K.B. then opened the door, and that he (Preston) realized he had shot N.L.

{¶19} Preston testified that he called 911 and told the dispatcher that he shot someone "on accident." After calling 911, Preston asked his friends to shoot him, but they refused. Preston testified that he then "shot [him]self in the head."

{¶20} On cross-examination, Preston acknowledged that the gun was heavy, and that he had to hold it with two hands. Preston explained that, as soon he raised the gun, he "touched the trigger too fast" and "shot a shot." Preston reiterated that he "didn't mean to shoot the gun."

{¶21} The jury found Preston not guilty of murder in violation of R.C. 2903.02(A), but guilty of the remaining counts and firearm specifications. The trial court merged Preston's convictions for felonious assault and reckless homicide with the conviction for felony murder. The State elected to proceed with sentencing on the conviction for felony murder.

{¶22} The trial court sentenced Preston to a prison term of 15 years to life for the conviction of felony murder. The trial court then sentenced Preston to three-year prison terms for each of the three firearm specifications. The trial court ordered two of the three-year prison terms to run consecutively, and the third three-year prison term to run concurrently. Thus, the trial court imposed an aggregate prison term of 21 years to life. Preston now appeals, raising three assignments of error for this Court's review.

{¶23} Prior to addressing Preston's assignments of error, this Court notes that Preston has attempted to incorporate by reference the arguments made in each of his assignments of error into his other assignments of error. App.R. 12(A)(2) and App.R. 16(A)(7) require an appellant to set forth a separate argument in support of each assigned error. Consequently, "an appellant 'cannot incorporate the arguments contained in the other assignments of error to support a different assignment of error.'" *State v. McKnight*, 2023-Ohio-1933, ¶ 10 (9th Dist.), quoting *State v. Calhoun*, 2021-Ohio-1713, ¶ 24 (9th Dist.). This Court declines to extrapolate and apply the arguments Preston made in each of his assignments of error to the other assignments of error. *McKnight* at ¶ 10. Instead, this Court will confine its analysis to the arguments Preston raised in each assignment of error.

II.

ASSIGNMENT OF ERROR ONE

APPELLANT'S CONVICTIONS FOR MURDER, IN VIOLATION OF SECTION 2903.02(B) OF THE OHIO REVISED CODE, AND FELONIOUS ASSAULT, IN VIOLATION OF SECTION 2903.11(A)(2) OF THE OHIO REVISED CODE, ARE UNCONSTITUTIONAL AS THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION.

{¶24} In his first assignment of error, Preston challenges the weight and the sufficiency of the evidence. "It is well-established, however, that 'a review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations.'" *State v. Omenai*, 2024-Ohio-1571, ¶ 13 (9th Dist.), quoting *State v. Seibert*, 2021-Ohio-3069, ¶ 13 (9th Dist.). "Accordingly, 'it is not appropriate to combine a sufficiency argument and a manifest weight argument within a single assignment of error.'" *Omenai* at ¶ 13,

quoting *Seibert* at ¶ 13; *see* App.R. 12(A)(2). Nonetheless, we exercise our discretion to consider the merits of Preston's combined assignment of error. *Omenai* at ¶ 13.

{¶25} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.* The trier of fact is entitled to rely on direct, as well as circumstantial evidence. *See id.*

{¶26} Preston argues that the State failed to present sufficient evidence to support his conviction for felony murder because the State failed to establish the mens rea for the predicate offense of felonious assault. Specifically, Preston argues that the State failed to prove that he knowingly caused physical harm to N.L.

{¶27} The felony murder statute provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree . . . ." R.C. 2903.02(B). Here, the predicate offense was felonious assault under R.C. 2903.11(A)(2).

{¶28} R.C. 2903.11(A)(2) provides that "[n]o person shall knowingly . . . [c]ause or attempt to cause physical harm to another . . . by means of a deadly weapon . . . ." Thus, to establish that Preston committed felony murder under R.C. 2903.02(B) (with the predicate offense of

felonious assault), the State had to prove that Preston acted knowingly. *State v. Ivery*, 2020-Ohio-3349, ¶ 8 (9th Dist.).

{¶29} R.C. 2901.22(B) provides that a person acts knowingly, regardless of purpose, when:

> the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

"[W]hether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *Ivery* at ¶ 9, quoting *State v. Murphy*, 2010-Ohio-1038, ¶ 15 (9th Dist.).

{¶30} In determining whether a defendant acted knowingly for purposes of felonious assault, it is "irrelevant that [the defendant] may not have *intended* to cause [the victim's] physical injuries." (Emphasis added.) *State v. Anderson*, 2006-Ohio-6152, ¶ 43 (10th Dist.); *accord State v. Mpanurwa*, 2017-Ohio-8911, ¶ 11 (2d Dist.). This is because "[t]he mental element of knowledge does not require an inquiry into the purpose for an act . . . ." *Anderson* at ¶ 43. Instead, it "involves the question of whether an individual is aware that his or her conduct will probably cause a certain result or will probably be of a certain nature." *Id.*

{¶31} In support of his argument, Preston asserts that the shooting was an accident, and that the evidence only supported a conviction for reckless homicide. In doing so, Preston asserts that he testified that he was "careless[,]" and argues that careless is synonymous with reckless. But Preston did not testify that he was careless. Rather, a review of his testimony indicates that Preston specifically testified: "I was careless" but then immediately corrected himself, testifying:

"I wasn't careless, but I was moving too fast is all I can say." Thus, to the extent Preston's argument is based upon his purported testimony that he was "careless[,]" the record does not support his argument.

{¶32} In further support of his challenge to the sufficiency of the evidence, Preston points out that the detective did not test the trigger pull of the gun, nor did the detective test the gun to confirm that it was semiautomatic. Preston also points to testimony indicating that everyone at the house was having a good time, and that no one was fighting that evening. Preston concludes that "[t]he firearm testimony, combined with the testimony regarding the lack of any fighting or arguing at the house prior to N.L.'s shooting, demonstrates the clear lack of intent." Preston then cites case law for the proposition that pointing a gun a someone, without more, is not sufficient to prove that a defendant committed felonious assault.

{¶33} As Preston argues in his merit brief, evidence that a person pointed a gun in someone's direction, without additional evidence regarding the person's intention, is insufficient to prove felonious assault. *State v. Brooks*, 44 Ohio St.3d 185 (1989), at syllabus ("The act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)."). But according to the State's evidence at trial, Preston did more than point a gun; he fired it.

{¶34} The State presented evidence indicating that Preston picked up his gun after he heard a knock at the back door. Preston then went to the back door with K.B. K.B. asked who was there, but no one responded. Preston then fired his gun through the back door. The State presented evidence indicating that N.L. sustained two gunshot wounds to her head, one of which

was fatal. The State also presented evidence indicating that Preston apologized after the shooting, saying "[h]e didn't mean to do it."

{¶35} As this Court (and others) has acknowledged, "[e]vidence that a defendant fired a gun in a person's direction is sufficient evidence that the defendant acted knowingly for the purpose of a felonious assault conviction." *Ivery*, 2020-Ohio-3349, at ¶ 13 (9th Dist.), quoting *State v. Fox*, 2018-Ohio-501, ¶ 14 (10th Dist.); *accord State v. Markley*, 2015-Ohio-1890, ¶ 41 (3d Dist.), quoting *State v. Jordan*, 1998 WL 827588, *12 (8th Dist. Nov. 25, 1998) ("[f]iring a gun in a person's direction is sufficient evidence of felonious assault."); *State v. Jefferson*, 2017-Ohio-7272, ¶ 17 (6th Dist.) (same). This remains true if a defendant fires through a door without knowing who could be behind it. *See State v. Fisher*, 2023-Ohio-2088, ¶ 24 (6th Dist.) (collecting cases); *State v. Miller*, 2023-Ohio-1466, ¶ 27 (9th Dist.), quoting *In re F.D.*, 2015-Ohio-2405, ¶ 25 (8th Dist.) ("Ohio courts have consistently held that shooting a gun in a place where there is a risk of injury to one or more persons supports the inference that the offender acted knowingly."). Thus, viewing the evidence in a light most favorable to the State, the State set forth sufficient evidence to allow the jury to reasonably conclude that it proved the essential elements of felonious assault beyond a reasonable doubt. Accordingly, Preston's challenge to the sufficiency of the evidence lacks merit.

{¶36} This Court now turns to Preston's challenge to the manifest weight of the evidence. When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986).

"A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019- Ohio-3970, ¶ 26 (9th Dist.). This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Warren*, 2020-Ohio-6990, ¶ 25 (9th Dist.), quoting *State v. Tolliver*, 2017-Ohio-4214, ¶ 15 (9th Dist.).

{¶37} Preston argues that his convictions for felonious assault and felony murder were against the manifest weight of the evidence because the evidence only supported a conviction for reckless homicide. Preston argues that the evidence indicated that he was careless in handling the gun, that he accidentally fired it, and that he did not knowingly cause physical harm to N.L.

{¶38} Preston's challenge to the manifest weight of the evidence relies on his version of events, that is, that he accidentally fired the gun. Preston points to evidence indicating that he immediately apologized for shooting the gun, and that he attempted to take his own life. But the jury was not required to believe that Preston fired the gun by accident. *See State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *Prince v. Jordan*, 2004-Ohio-7184, ¶ 35 (9th Dist.). During his own testimony, Preston acknowledged that it was a "terrible" neighborhood, and that he thought there was possibly "trouble" on the other side of the door. The only explanation Preston offered as to how the shooting occurred was that he "touched the trigger too fast" when he raised the gun.

{¶39} As previously noted, it is "irrelevant that [a defendant] may not have *intended* to cause [the victim's] physical injuries" for purposes of felonious assault. (Emphasis added.) *Anderson*, 2006-Ohio-6152, at ¶ 43 (10th Dist.). By finding Preston not guilty of murder in violation of R.C. 2903.02(A), the jury found that Preston did not purposely cause N.L.'s death. Instead, the jury determined that Preston knowingly caused physical harm to N.L. when he fired

his gun through the back door after he heard someone knock on the door. In doing so, the jury was free to reject Preston's testimony that he accidentally fired his gun because he "touched the trigger too fast." *Prince* at ¶ 35 ("[T]he jury is free to believe all, part, or none of the testimony of each witness.").

{¶40} The jury was in the best position to observe all of the witnesses' demeanor, and to use those observations to weigh their credibility. *State v. James*, 2019-Ohio-2604, ¶ 19 (9th Dist.). Here, the jury rejected Preston's contention that he fired the gun by accident, and instead chose to believe the State's version of the events. Doing so is not a basis for reversal. *Warren*, 2020-Ohio-6990, at ¶ 25 (9th Dist.). Having reviewed the entire record, this Court cannot say that the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *Otten*, 33 Ohio App.3d at 340. Accordingly, Preston's challenge to the manifest weight of the evidence lacks merit.

{¶41} In light of the foregoing, Preston's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE COURT ERRED WHEN IT ADMITTED IRRELEVANT AND UNDUL[Y] PREJUDICIAL EVIDENCE, IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION; AND RULES 402 AND 403(A) OF THE OHIO RULES OF EVIDENCE.

{¶42} In his second assignment of error, Preston argues that the trial court erred when it admitted some of N.L.'s grandmother's testimony at trial. Preston acknowledges that this Court must review this issue for plain error because his trial counsel did not object to N.L.'s grandmother's testimony at trial.

{¶43} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B).

> By its very terms, [Crim.R. 52(B)] places three limitations on a reviewing court's decision to correct an error that was not raised below. First, an error, i.e., a deviation from a legal rule, must have occurred. Second, the error complained of must be plain – that is, it must be an obvious defect in the * * * proceedings. Third, the error must have affected substantial rights. We have interpreted this * * * to mean that the trial court's error must have affected the outcome of the proceedings.

(Alterations in original.) *State v. Harris*, 2020-Ohio-4365, ¶ 19 (9th Dist.), quoting *State v. Martin*, 2018-Ohio-3226, ¶ 28. Thus, "[t]his Court may not reverse the judgment of the trial court on the basis of plain error, unless appellant has established that the outcome of trial clearly would have been different but for the alleged error." *State v. Higgins*, 2018-Ohio-476, ¶ 27 (9th Dist.), quoting *State v. Klingel*, 2017- Ohio-1183, ¶ 29 (9th Dist.).

**{¶44}** Preston argues that N.L.'s grandmother provided a "litany of testimony that was unrelated to [his] guilt" Specifically, Preston cites N.L.'s grandmother's testimony wherein she testified that: (1) she did not know Preston but had heard that Preston and N.L. were in a relationship, (2) N.L. was in the process of trying to find a place to stay and "get her kid back" around the time of the shooting; (3) she heard of N.L.'s death from her other granddaughters; and (4) N.L.'s "child ha[d] been adopted out" since N.L.'s death. Preston argues that this testimony was inadmissible on the basis that it was irrelevant under Evid.R. 402 and/or that it was not based upon N.L.'s grandmother's personal knowledge under Evid.R. 602. Preston also argues that, even if the evidence was relevant, it was inadmissible because its evidentiary value was greatly outweighed by the danger of unfair prejudice under Evid.R. 403(A). Preston further argues that the testimony regarding N.L.'s "situation at the time of her death and the impact on her child being adopted out" was irrelevant and amounted to overly emotional victim-impact testimony.

**{¶45}** Initially, this Court concludes that N.L.'s grandmother's testimony did not amount to "overly emotional" victim-impact testimony. *State v. Nicholson*, 2024-Ohio-604, ¶ 194, quoting *State v. Graham*, 2020-Ohio-6700, ¶ 123. "Victim-impact evidence includes evidence relating to

the victim's personal characteristics and the impact that the crimes had on the victim's family."
*Nicholson* at ¶ 193, quoting *Graham* at ¶ 113. The Ohio Supreme Court has identified the following factors for courts to consider when determining whether a trial court has committed reversible error by admitting "overly emotional" victim-impact testimony:

> (1) the length of the victim-impact testimony . . .; (2) whether witnesses, jurors, and audience members showed physical signs of emotion during the testimony . . .; (3) the detail and depth of the victim-impact testimony with regard to the murder victim . . .; (4) whether the victim-impact witness used emotionally charged language . . .; (5) the number of victim-impact witnesses . . .; and (6) our precedent in similar cases involving allegedly overly emotional victim-impact testimony . . . .

*Graham* at ¶ 126. The Court cautioned that this "list is not exhaustive, and it also should not be treated as a checklist." *Id.* Rather, the Court indicated that it "list[ed] these factors merely as matters to be considered." *Id.*

{¶46} Here, N.L.'s grandmother's testimony spanned less than 5 pages of the more than 400-page trial transcript. Aside from indicating that N.L.'s child had been "adopted out" since her death, N.L.'s grandmother's testimony provided no detail as to the impact of N.L.'s death on her family. Additionally, there is no indication that N.L.'s grandmother used emotionally charged language, or that "witnesses, jurors, and audience members showed physical signs of emotion during [her] testimony . . . ." *Graham* at ¶ 126. Simply put, N.L.'s grandmother's testimony was not the type of "overly emotional" victim-impact testimony that a trial court errs by admitting at trial. *See id.* As a result, Preston's argument in that regard lacks merit.

{¶47} Furthermore, assuming without deciding that the trial court otherwise erred by admitting some of N.L.'s grandmother's testimony, Preston has not established that it affected the outcome of the trial. *See* Crim.R. 52(B); *Higgins*, 2018-Ohio-476, at ¶ 27 (9th Dist.). There was no dispute that Preston shot and killed N.L. As Preston acknowledges on appeal, the dispute centered upon Preston's mental state at the time of the shooting. This Court fails to see how N.L.'s

grandmother's limited testimony, even if erroneously admitted, affected the outcome of the trial. *See Higgins* at ¶ 27. As a result, Preston has failed to establish plain error. Preston's second assignment of error is overruled.

### ASSIGNMENT OF ERROR THREE

APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL, IN VIOLATION OF STRICKLAND V. WASHINGTON, THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION.

{¶48} In his third assignment of error, Preston argues that his trial counsel rendered ineffective assistance by failing to object to N.L.'s grandmother's testimony at trial. For the following reasons, this Court disagrees.

{¶49} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, Preston must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, Preston must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 2016-Ohio-8025, ¶ 138. "This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong." *State v. Carter*, 2017-Ohio-8847, ¶ 27 (9th Dist.).

{¶50} "The Ohio Supreme Court has stated that 'the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel.'" *State v. Quintile*, 2024-Ohio-

2026, ¶ 12 (9th Dist.), quoting *State v. Conway*, 2006-Ohio-2815, ¶ 103. Relatedly, this Court has "consistently held that 'trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel'" unless the failure to object prejudiced the defendant. *State v. Velez*, 2007-Ohio-5122, ¶ 17 (9th Dist.), quoting *State v. Taylor*, 2002-Ohio-6992, ¶ 76 (9th Dist.).

**{¶51}** In our resolution of Preston's second assignment of error, this Court determined that N.L.'s grandmother's testimony, even if erroneously admitted, did not affect the outcome of the trial. It follows that, even if Preston's trial counsel was deficient by not objecting to her testimony, that deficiency did not prejudice the defense. *See Strickland*, 466 U.S. at 687; *Velez* at ¶ 17. Accordingly, Preston cannot establish that his trial counsel rendered ineffective assistance. Preston's third assignment of error is overruled.

### III.

**{¶52}** Preston's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

ADAM M. VANHO, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.